GEORGIA,
Chatham Co.
JAN. 1809.

State
vs.
Corporation of.
Savannah.

*Minutes of Superior Court, letter G. p. 94.*

*Chatham County, Jan. Term,* 1809.

STATE *vs.* CORPORATION OF SAVANNAH.

### CERTIORARI.

By *Charlton*, Judge.

A CERTIORARI was issued from this court, to bring before it the proceedings of the mayor and aldermen of the city of Savannah, acting as a common council, upon the deposition of *Vincent Pendergast,* which states that the mayor and aldermen did, on the 26th day of December last, impose upon the deponent, fines to the amount of one hundred and fifty dollars, exclusive of costs, for keeping a faro bank, or table.

It appears, to the return made in evidence to the writ of certiorari, that this person was fined on the 26th, for keeping a faro table on the 15th December, thirty dollars and costs; for keeping a faro table on the 16th, the same sum and costs; for keeping a faro table on the 17th, the same sum and costs; and for keeping a faro table on the 19th, the same sum and costs; and for keeping a faro table on the 20th, the same fine of thirty dollars and costs.

It also appears from the return, that these fines were all imposed at one sitting of council, on the 26th December, as is sworn to by *Pendergast.* It appears that these fines were imposed in consequence of the information of witnesses; but it does not appear, from any of the proceedings of council, that *Pendergast* was cited before them, or had any other notice of their proceedings.

In this country no person can be injured, in his personal property, without an opportunity of defending himself. He has the right of being confronted with his accusers, and of being apprized of the accusation against him. " *Audi alteram*

GEORGIA,     *partem*, is a maxim of natural justice dear to the human heart,
Chatham Co.
JAN. 1809.   and associated with every principle of our jurisprudence.
             Conviction, founded upon *ex parte accusation*, is the most ter-
   State     rible species of despotism that the human mind can conceive.
    vs.
Corporation of   It is not only a violation of the most obvious dictates of com-
 Savannah.
             mon law, but it is destitute of every principle by which the
             social compact is supported.

Upon the ground alone, then, that the party had not been summoned to answer to the charge exhibited against him, I would feel myself authorized to quash their proceedings. I would quash them upon what I conceive to be an infringement, —a gross, unwarrantable, dangerous infringement of a fundamental principle of eternal justice, and of the genius and simplicity of our particular form of government.

But it is not necessary to resort to these high grounds of abstract justice alone, to destroy their proceedings. No law is better established than that of corporations; and it is settled, by that law, that a corporation can inflict no punishment, or proceed against any person for a supposed offence, unless particular *notice* is given to the person against whom they are about to proceed, in order that he may prepare his defence. In Rex *vs.* Common Council of Liverpool, 2 Burrow, 731, it is there said, by Lord Mansfield, that the person intended to be amoved, should have a particular summons to answer to the particular charge. In the case of Rex *vs.* University of Cambridge, all the judges agreed, that the want of a summons was an incurable error; and on this point, the expressions of Justice Fortescue are so impressive, that I cannot avoid inserting them. (The objection, says the judge, for want of notice, can never be got over. The laws of God and man both, give the party an opportunity of making his defence, if he has any. I remember to have heard it said, by a very learned man, upon such an occasion, that even God himself, did not pass sentence upon Adam, before he was called upon to make his defence. Adam, (says God,) where art thou; hast thou eaten of the tree, whereof I commanded thee that

thou shouldst not eat ? And the same question was put to Eve also.)   1 Strange, Rep. 567.

These were decisions upon returns to mandamus for restoration to corporate offices.   But the principle is a general one, and applies to the acts of corporate bodies, whether proceeding on a disfranchisement, or against a private person, for a supposed violation of a by-law.

GEORGIA,
Chatham Co.
Jan. 1809.

State
vs.
Corporation of
Savannah.

The observations of Justice Fortescue are confined to no particular proceedings, but are founded on the broad basis, that the laws, both of God and man, give the party an opportunity to make his defence, if he has any.

The ground being sufficient to set aside their proceedings, it is not absolutely necessary that I should advert to the unconstitutionality of the summary jurisdiction, undertaking to inflict a punishment for a crime or misdemeanor.

I shall, however, dispose of that objection, in order that our fellow citizens may precisely know upon what footing their constitutional liberty stands ; the 3d article of the constitution declaring, that the Superior Courts shall have final and exclusive jurisdiction in all criminal cases.

Mr. *Recorder* would confine this jurisdiction to crimes, as contradistinguished to misdemeanors ; and he relies upon Blackstone for the distinction which he attempted to establish.   No such distinction, however, is warranted by that authority.   In his definition of crime, he says, a crime or misdemeanor, is an act committed, or omitted, in violation of a public law, either commanding, or forbidding it.   This general definition comprehends both crimes and misdemeanors, which, properly speaking, are mere synonymous terms.   4 Blk Com. 4, 5.   The annotator, *Christian,* says, that in the English law, misdemeanor is generally, and in contradistinction to felony ; offences and misdemeanors denote inferior crimes ; so says Judge Wilson in his work, vol. 3. p. 4, and so say *I.*   Is the injury of an indictable nature ?  This is the only question to be asked, in ascertaining the powers of a summary jurisdiction.   If it is indictable, there is no power, short of a convention, can deprive a Superior Court of its final and exclu-

GEORGIA,
Chatham Co.
JAN. 1809.

State
vs.
Corporation of
Savannah.

sive jurisdiction. No act of the legislature can directly, or *per obliquum,* deprive the Superior Court of that jurisdiction. All acts of that description, I would, without any kind of hesitation, declare unconstitutional. I will not sit here, and suffer the constitution to be violated ; no, not by the legislature, and certainly not by a small body of men, clothed with a " *little brief authority,*" and exercising a puny legislation upon matters of city police.

Is the keeping of a public gaming house, or table, an indictable offence ?

Mr. *Bulloch* has canvassed the question with great clearness, learning, and ability ; and if I did not know before that it was an indictable offence, he has convinced me that it is.

It is expressly said, that a man may be indicted for keeping a gaming house ; a gaming house being a nuisance or offence against the public police. 4 Blk. Com. 167. This is a part of that law which our ancestors brought from England, and is not impaired by our fundamental laws.

The person keeping a gaming house, may still be indicted for a nuisance, or proceeded against under the 5th section of the act to suppress lotteries, and to prevent other excessive and deceitful gaming, passed February 29, 1764 ; Marb. and Crawf. Dig. 251 ; and this section directs, that the persons offending shall be proceeded against by indictment.

But it is always safest to proceed under the common law notion of a nuisance ; because there is less difficulty in proving the nuisance, than the loss of particular sums under the 5th section of the provincial act of 1764 ; and it is the safest upon another ground, because many parts of the act of 1764 cannot now be carried into effect, from the important change made in the jurisdiction of magistrates, by our constitution.

It therefore appears, that the deponent, *Pendergast,* is charged with an indictable offence, for which the corporation of Savannah have attempted to inflict a fine. This outrage upon our constitution, I will now prevent ; and will prevent in all similar cases. Moral and good men ought, however, (as was observed by *Mitchell*) not to be alarmed by this check

on the public authority of the corporation ; they ought not to be alarmed because a most exemplary punishment is annexed to a conviction in this court. I have snatched the victim from the city officer, that he may have a trial by jury, and all other privileges which are guaranteed, by the constitution, to a citizen, without any regard to extrinsic circumstances. But having a knowledge of an offence having been committed, which strikes at the root of public morality, it is my duty to take notice of the offender.

GEORGIA,
Chatham Co.
Jan. 1809.

State
vs.
Corporation of
Savannah.

It is, therefore, ordered, that a warrant do issue, upon affidavits to be taken by the mayor, that a gaming table, and disorderly house was kept by *Vincent Pendergast*, and that he, therefore, be recognised to appear at the next Superior Court, to answer to a bill of indictment for a nuisance ; in the mean time, let the proceedings, as they appear upon the return of the certiorari, be quashed, and the deponent be discharged from any process of the city council, which may have issued thereupon.

Proceedings of the corporation quashed.

*Mitchell* and *Bulloch*, for certiorari.
Mr. Recorder *Habersham*, for corporation.